Smith, C. J.,
summed up to the jury, February Term, 1807.
In this case, Brown and Larkin are merely nominal plaintiffs. The real party plaintiff is St. John’s Church. If the church recover, it must be because they have a good title. If the church has no title, it is immaterial whether the defendants have any title or not. The church must also prove a seisin within thirty years next before March 1, 1805.
Act of incorporation was passed Feb. 15, 1791.
[The plaintiffs claim title under devise of Samuel Sherburne.]
Will of Henry Sherburne, Dec. 27, 1757, proved April 29, 1758; devise of premises to his sons, Samuel and Henry, in fee. Will of Samuel Sherburne, Feb. 5, 1765, proved Feb. 18, 1765, is in these words: “ I give and bequeath to the Church of England, as by law established in the town of Portsmouth, £2,000, old tenor; to the support of an organist in Queen’s Chapel, under the care and direction'of the vestry and churchwardens for the time being. I give and bequeath to the said church or chapel my moiety or half part of a pasture or lot of land and meadow (the premises) ; which said tract was given me by my honored father in his last will and testament; and this bequest to be under the directions of the church-wardens of said parish for the time being, and to remain as a perpetual *181 glebe to the said church and parish, and to their successors for ever.” He then devises to the church another small lot, to be under the care and directions of the church-wardens and vestry as aforesaid, intended as a place to rebuild a school-house upon, to have and to hold the same to the church-wardens and vestry for the time being, for ever.
From these papers it appears that Samuel Sherburne was the owner (for Col. Henry Sherburne’s, his father’s, title is admitted) in 1765 ; that he attempted to devise it, by his will of that date, to the Church of England as by law established in Portsmouth, or Queen’s Chapel in said town. There is no doubt Samuel Sherburne was capable of devising; but can the plaintiffs, St. John’s Church, take and hold the estate devised ? If they cannot, verdict must be in favor of defendants, and the land will either go to the residuary devisee in Samuel Sherburne’s will, or to his heirs at law. It is very clear that Samuel Sherburne could have accomplished his end in another form, against which there could be no objection. He might have devised to certain persons, to hold for specified purposes, or in trust to apply the rents and profits to the use of the minister officiating in that church or chapel. 2 Wooddes. 276, n. 7c. The legal property would in that case have been in the devisees, and they, or (if so provided in the devise) the survivor, might convey to others to hold in trust as before.
If this church had been incorporated in 1765, as they were in 1791, it is said, by defendant’s counsel, they could not take by devise. If they could purchase in any other way, I see no reason why they could not take in this way. I have not had an opportunity, on this point, of availing myself of information acquired by former researches into the powers and capacities of corporate bodies in this State. But at present I see no reason to doubt but that a body politic, like our towns, parishes, or religious societies, is capable of taking by devise, independent of any special authority contained in an act of incorporation.
But it is further said that, supposing the Episcopal Church incorporated in 1765, still this devise would not give them the property in question. This action is brought by St. John’s Church, and the devise was to the Church of England by law *182 established in Portsmouth, or Queen’s Chapel. At present, I am of opinion there is nothing in this objection. [16 Mass. 495, cited in margin.] If the church was a body politic in 1765, by the name of Queen’s Chapel, this devise is, in point of form, sufficient to transfer the property to them, (a) The change of the name — for that would be the only effect of the act of incorporation in 1791 — would not devest the property. (b) If it would, here it is expressly vested in St. John’s Church. The legislature cannot take Mr. Langdon’s property from him and give it to St. John’s Church; but they can, with the consent of Queen’s Chapel, vest their property in the same persons by the name of St. John’s Church.
It has been further objected that, supposing Queen’s Chapel or the Episcopal Church to be a body politic in 1765, yet, being a religious corporation, they cannot take property.
Common law, as well as statute law, grows out of the situation and circumstances of the people. There was a time in England when the lay gentry thought they saw the property flowing into the coffers of the clergy a little too freely. The clergy of that day were not content with the personal property ; they became possessed of a considerable proportion of the real property of the kingdom. Hence the laws to restrain alienations to the clergy. These laws were not imported into this country, at least into New England, because they were not wanted. The clergy were poor, — I speak of the first clergy of New England, — they abhorred riches. The wealth of a clergyman in those days was his crown of rejoicing, the number- of converts he made, the number of sinners he reclaimed. *183 He disdained worldly wealth. He coveted not houses and lands. Very many of the clergy of that day accounted it unlawful and unchristian for a clergyman to have any fixed salary. Hence I conclude there never was any law in New England to prohibit clergymen or religious corporations from acquiring property. It was always the policy of our law to encourage public instruction in religion and morality, and the support of it by religious corporations. The law never could, then, have prohibited them from 'acquiring the menus of accomplishing that end.
But the great objection to the plaintiff’s title is, that neither Queen’s Chapel nor St. John’s Church had any legal existence till 1791.
A devise to the Church of England in Portsmouth would be void for uncertainty in the description of the devisees. The Church of England never was established by law in this State. A devise to a society unincorporated is not valid, because it cannot be ascertained who are to take; an unincorporated society has no identity ; it Pannot be ascertained, (a) , [1]
Was there a body politic in Portsmouth by the name of the Church of England, Episcopal Society, or Queen’s Chapel, at the time of this devise, Feb. 5, 1765 ? No act of incorporation is produced till that of Feb. 15,1791. - The act implies strongly that no act of incorporation had ever been passed. But [this] is not conclusive ; the plaintiffs may still show an act, if they can, which constituted Queen’s Chapel a body politic before this devise was made. They can produce no such act; but they contend that they can produce other satisfactory evidence of the fact: for 166 years they have acted as a corporate body; exercised the powers of a corporation; have been recognized by our statutes as such.
*184 [The evidence on this point is as follows : — ]
A paper recorded in Portsmouth Town Book, in 1664, by-selectmen, that it might • not be lost. Purport: Grant, May 25, 1640, by sundry individuals, Fra. Williams, Gov., Ambrose Gibbon, Assistant, cum multis aliis, of a certain piece of land, to build a chapel upon (not the land in dispute), and money. The grant was made to Tho. Walford and Henry Sherburne, church-wardens, in perpetuity, for the use of the parish; the church-wardens and others to have the superintendence thereof; not to be alienated without the assent of all the parishioners. Church built. Richard Gibson, minister or incumbent. Right of presentation to be in the parishioners. (a)
In 1732, it is admitted, St. John’s Church was erected, (b) — then called Queen’s Chapel, — the old chapel was in another place.
June 3, 1754, Theo. Atkinson (afterwards Chief Justice and Secretary and Councillor), conveyed to Arthur Brown, rector of the church, to him and his successors, as feoffees in trust (present burial ground).
1746, John Bartland devised the reversion of certain lands to the poor of the church in Portsmouth.
1768, indenture, between Hall Jackson and the wardens of the church, of lands (not premises), for twelve years.
Records of the church go back as far as 1740, and show that they have acted as a corporate body, made taxes, issued warrants in the forms used by selectmen. The greatest legal *185 characters in the State have been concerned m these transactions. (a)
Recognition of the church as a body politic.
1786, legislature, by act, enabled the church to collect taxes by sale of pews, March 2,1786. Province Law, 177, speaks of church-wardens, and gives them the power of selectmen: this act passed 1754. Additional act, passed in 1758, to same effect. There was then no other Episcopal parish, except in Portsmouth, in the province, nor any wardens chosen by any other parish.
The other parishes in Portsmouth have acted in the same [manner]. Dr. Buckminster’s was not incorporated by any act now appearing, till June 15, 1791. The South Parish was not incorporated, and yet actions have been maintained against them(b) before the Revolution; which shows they were considered as a corporate body.
In Anthology, November, 1806, 682, it appears that religious parishes or societies in New England have always acted as corporate bodies.
There was probably some general or special law, which cannot now be produced (1 Blackst. 471), giving these parishes the powers of corporate bodies.
This is the evidence, and these are the authorities and observations of the counsel, to satisfy the jury that Queen’s Chapel was a corporate body in 1765. I have not had an opportunity to examine the evidence critically, nor to weigh and consider attentively the authorities and the observations of the counsel, and, therefore, decline giving any decisive (c) opinion on either. If the jury find that plaintiffs were a corporate *186 body, by the name of Queen’s Chapel, or the Church of England in Portsmouth, in 1765, then the title of plaintiffs is, in the opinion of the Court, good and sufficient in law. If not, verdict must be for defendants.
But, as has been already intimated, plaintiffs must not only have a good title, but they must prove a seisin within thirty years next before March 1, 1805.
As to this point, (a) it is not thought necessary to state the evidence in this report; nor is it necessary to state the title of the defendants (it was by release from the heirs at law of Henry Sherburne, the first devisor, one half; and the other moiety from Samuel Sherburne, the residuary devisee of Samuel Sherburne, to Woodbury Langdon, Aug. 11, 1779).
Note. Members of the church were admitted as witnesses, though objected to by defendants.

Jury did not agree. Cause continued.

At September Term, 1807, dismissed, parties having compromised ; defendants having paid the church part of the value of the lands sued for, ut audivi.[1]

 It has been said by defendant’s counsel that this devise is to the parson, and this gives no title to the church. 1 Blackst. 497; Pow. Dev. 336. The parson could not take, because, in this State, he is not a corporation sole, as in England; and the legislature could not, in 1791, devest the property from the parson, if he could take, and vest it in the church. But I am of opinion this was not a devise to the parson, hut to the church.

 Though the name of a corporation be changed (as in the case of a new charter), yet it still retains its former rights and privileges. 1 Chr. Notes, 650. A change of name or new charter does not merge the ancient privileges : Com. Dig. Franchises, F. 9, g. 5; and it shall retain the possessions it had before.

 Shep. 231, 237. Lands cannot be granted to the church-wardens of a parish.
Parishioners not capable of taking by devise. 2 Wooddes. 276, n. To.

 Such a devise is now sustainable under Gen. Laws, c. 153, § 5. See also Bellows, J., in Newmarket v. Smart, 1863, 45 N. H. 87, 98, 99. Perley, G. J., in The Dublin Case, 1859, 38 N. H. 459, 575; Hennessey v. Walsh, 1875, 55 N. H. 515; 2 Kent, Com. 12th ed. 287, n. 1, 288, n. a.

 Aug. 15, 1745, division was made between H. Sherburne and Jotham Odiorne, feoffees in trust, and two other wardens and the First Congregational Society, of these lands.
As to this transaction in 1640, see 1 Holmes, American Annals, 316, and n. 2 [also 1 Provincial Papers, 111-113].

 This was the first Episcopal church built in Hew Hampshire. 2 Holmes, American Annals, 134. [See 4 Provincial Papers, 650, n. 1.]
Note. Episcopacy seems to have slept in this State from 1640 to 1730. The union with Massachusetts would naturally tend to discourage the growth of Episcopacy.

 May 3, 1721, John Pickering conveyed to tho minister and people of the old meeting-house in Portsmouth, those who do attend and their successors, land on which to build a church.
June 10, 1731, same lands confirmed by the same description of grantees by Thomas Pickering.

 Stilson v. Proprietors and Parishioners of the South Church in Portsmouth, for disturbing plaintiff in the use and enjoyment of his pew. Sup. Court, 1760. Verdict for plaintiff; damages forty shillings.

 The Chief Justice expressed doubts as to the propriety of letting in this kind of evidence to prove the incorporation.

 Brown died in 1773. There did not seem to be much evidence of any actual possession by the church, or their'lessees, after that time. But the title of defendants did not accrue till 1779; and those under whom they claimed did not appear to have denied the plaintiffs’ title, but in many instances to have recognized it, and in some instances after 1776. It was not distinctly stated in the testimony when Woodbury Langdon entered.
In 1736, Rev. A. Brown was ordained minister of that church, with a salary from the Society for Propagating the Gospel. 2 Holmes, American Annals, 134.

 I. A beqnest to “the Church or Congregational Society in Greenland,” may be construed as a gift to the Congregational Society in Greenland; it being shown that there was a legal corporate body of that name, and there being no corporation or association bearing the ñame of The Church in Greenland. Congregational Society v. Hatch, 1869, 48 N. H. 393.
II. As to proof of incorporation, see New Boston v. Dunbarton, 1841, 12 N. H. 409; s. c. 1844, 15 N. H. 201; Bow v. Allenstown, 1857, 34 N. H. 351.